et al. And we have Ms. Hammonds. Good morning. Good morning, Your Honors. You have two minutes for rebuttal and you can begin whenever you're ready. Thank you. May it please the Court, Amari Hammonds for the appellants. Under the FAA, if you have an arbitration agreement, you must arbitrate the disputes that it covers. Exceptions to that rule are construed narrowly with all doubts resolved in favor of arbitration. Is that really true after Morgan? I mean, I feel like you guys are acting like Morgan didn't exist and doesn't temper any of the language that we have, the very obviously pro-arbitration language we had. How do we understand those kinds of precedents in the face of Morgan? So Morgan didn't purport to overrule all those precedents. Morgan's holding was much narrower. It recognized that there is this liberal policy in favor of arbitration embodied in the FAA, but it said that policy doesn't allow courts to create special procedural rules that are specific to FAA. Okay. So I'm glad that we agree there. Let's start from there. So let's say, let's talk about, I guess, the standard review. What do you think is the, you would, I'm assuming, the 12b6 standard. Is that correct? Like about the standard, how we review whether or not a claim has been appropriately alleged and is connected to a sexual assault or sexual harassment claim. Is that correct? So this is an appeal from a motion to compel arbitration, and there the standard is de novo when a motion to compel arbitration has been denied. No, but we do need to come up with, like, a rule that makes the whole scenario fit. Fit, right? I mean, you would agree with that. We're not going to be creating new law in the face of something like Morgan and understanding how this relatively new statute means without having an understanding of how it all fits, right? So let's – how is one supposed to assess whether or not something is related to? Under what standard? That's not going to be de novo, right? That's going to be a 12b6. It's either plausibility or frivolousness, right? Well, here the meaning of relatedness in the statute is something that you review de novo, and related means a connection between the claims here. I just want to go back to whether or not you're challenging – I thought you weren't challenging the decision by the district court that the standard for – is frivolousness, whether it's frivolous or not, versus, like, the 12b6 plausibility standard. That you – you're not challenging that on this appeal, right? No. What we are challenging is the court – the district court's interpretation of case to mean action here. Right. And here, case has to mean claim and not action for three main textual reasons. So I'll give the top lines, and then I can go into each one. No. Well, let's start, though, with the presumption of if Morgan says no procedural rules, no new procedural rules, how can we even assert which claims are arbitrable and which claims are not unless we create a new procedural posture in which the which I think Morgan doesn't allow us to do. So why isn't that wrong? This is not a new procedural posture. Courts are asked all the time to determine on a motion to compel arbitration which claims are arbitrable and which ones are not. And when a question of statutory interpretation is involved in that analysis, courts regularly perform that analysis, and they do so on the pleadings. And here, the district court was incorrect to conclude that Section 402's exception to arbitration allowed all the claims and the action, regardless of relation to sexual harassment, to escape arbitration for three main textual reasons. So, first, the parties agree that the ordinary meaning of case can refer to a claim here. And plaintiff's concession on this point is dispositive because the FAA's statutory exceptions must be construed narrowly. That's not a procedural rule. These are longstanding interpretive principles about what the FAA provisions mean. And the other principle I discussed earlier was that all doubts must be resolved in favor of arbitration. In other words, as long as it's not impossible to read case to mean claim, it must mean claim. And plaintiff has conceded that it is not impossible. And what you just said is not affected by Morgan. Correct. And Morgan, as I understand it, said that the only thing that we have to be mindful of is that an arbitration agreement should be treated like any other agreement. And waiver or disposition can't be based upon prejudice to one of the parties. But that's it. Otherwise, all the prior law is good, isn't it? Isn't Morgan a case that's simply focused on the prejudice problem? Yes, correct. Morgan was solely limited to its holding that you can't make up a prejudice analysis. You have to treat arbitration contracts just as any other contract. And these interpretive principles about construing exceptions to arbitration narrowly are what help put arbitration. That's on the issue of waiver, though. That's on the issue of waiver. But isn't that — isn't that — isn't the essence of Morgan that you don't favor arbitration over other — arbitration agreements over other kind of agreements, but at the same time, you don't discriminate against arbitration agreements on the basis of — beyond what other agreements would entail? Correct. These agreements are on the same footing, and these interpretive principles help you do that. Right. But it couldn't — doesn't — how does that work with this particular case, though, in which — you know, say what you want about how expansive it was. Congress was specifically interested in disrupting that presumption. Right? I mean, you can't — I mean, they purposely recognized that that presumption was not — that longstanding backdrop presumption was not going to meet their ends. So they created a new rule to carve something out. So what do we do with that? Congress legislates against the principles that the Supreme Court has announced for the Federal Arbitration Act. And so a congressional command to override arbitration agreements must be clear and manifest, not buried in ambiguous language. And so we've talked about why case can mean claim, and that means you have to read it as claim here. But there are other textual reasons that lead to the same result. I just want to go back to that, because I'm not aware — maybe you can point me to a case that has ever interpreted the word case in a statute where there's been multiple claims asserted to mean one claim. That the word case means particular claim where someone brings a lawsuit with multiple claims. And I'm not aware of any case — any statute that has ever used the term case in that way, or any court that has ever used the term case in that way. And if you can point me to any statute or any court that has ever used the term case to refer to multiple — to refer to an individual claim, I'd be interested in knowing about it. So in our brief, we cited to Section 4 under the FAA, their cases of admiralty has been interpreted to mean — That's the word controversy. No, in Section 4, it says cases of admiralty. And then we cited that in our brief from the Chamber of Commerce. We've also discussed the fact that that has been interpreted to mean a claim in admiralty, not an entire case. We also pointed to — Not clear, right? I mean, at the very least, it requires us to go through a bunch of steps. Well, we also pointed to controversy in Section 2. Case can mean controversy. And then we pointed to the fact that Congress — it can't mean action here, because Congress repeatedly uses the word action in the FAA, including in provisions that the EFAA amended, when it means action. And so we have to presume that — Why can't Congress use the words case, action, proceeding, lawsuit, all interchangeably in statutes? So wouldn't that be possible? Congress can use synonyms. They pointed to the fact that in the effective date provision, they specifically used the word claims. So that goes completely opposite of the argument you were just making. They've used the word claims when they want to refer to individual claims. So why should we interpret case to mean something different than claims? So Section 3 is a different story, because that's a timing provision. And there, the full language refers to a claim that accrues. And Congress used that term of art there, claim accrual, because, as Olivieri recognized, claim accrual has an established legal meaning. Okay. But tell me, how do we understand your theory of claim when they chose to use the word dispute and claim? Right? Like, dispute and case. If they had said case and case, maybe. But the fact that they chose to use the dispute, which is something narrow, and still took the word case, which is presumably a bunch of disputes, how do we get around that? So sexual harassment dispute has a meaning that's defined in the statute. It means a dispute relating to conduct. Again, would you concede that dispute is narrower than case? Or dispute is more akin to claim? Would you agree that a dispute is equivalent to a claim? Well, a dispute is some sort of disagreement between parties. But here Congress Is that a subset? Is dispute a subset of an action? A dispute is something that can arise in an action. Yes, correct. But the reason why Okay, so the fact that they use the word mean that they were going with something narrower and then absorbing something bigger, including the narrower options? Well, if there's if it's not clear that case means claim, then you would go to the interpretive principles and they would still require that narrower reading. And another reason that we haven't spoken about yet, that case has to mean claim is because if it meant something broader, that would render critical provisions in the EFAA superfluous. So let's start with subsection A under section 402. There a court is required to do two things. One, confirm that the person is alleging conduct constituting a sexual harassment dispute. And two, once it's done that, then confirm the scope of the case that is related to that sexual harassment dispute. And related is specifically mentioned in the statute. I mean, it has to be related. It seems to me that you could have a you could have an action, which is a broad action that covers everything. And then you could have a case that within that you'd have a sexual harassment claim. And then related to that would be other claims, like a state claim or some other claim that's related to the sexual harassment claim. And that would be that could be a case. This is the this is what the Chamber of Commerce brief says. So they have three categories, essentially. A claim is an individual cause of action. A case is opposed to those claims joined by a common nucleus of fact. And an action would be a larger concept of the whole case, the whole litigation. And the words related, the word related, can't be read out of the statute. And it works both ways. It both enables you to figure out what exactly is tied to the sexual harassment claim. And at the same time, it leaves room for other claims that are not related to be treated in a separate way. Wouldn't you be satisfied? Your argument's different from that. I mean, you try to equate claim and action, but or claim and case. But wouldn't you be satisfied with the Chamber of Commerce rule, which is different from yours? So I see us in agreement with the part of that rule that says that all claims that are related to the sexual harassment dispute are the ones that do not have to be arbitrated. And that means claims that have some common underlying facts about the conduct or the injuries. I'm familiar with the idea of a common nucleus of operative facts. And that is, you know, everything surrounding the sexual harassment itself in this instance. But that would not encompass every necessary claim in a litigation. You could have a separate contract claim. You could have a separate tort claim of some sort that might not be related to the sexual harassment. You could claim to society to bunch all the claims, I guess, with a particular person together. And some of them are related to one another. Others are not. That's correct. So here, for example, the conversion claim, the conduct alleged with respect to whether or not the plaintiff was improperly deprived of her stock options, that conduct has nothing to do with the sexual harassment that she experienced in the workplace. And the only argument she's made for relatedness doesn't work with the statutory language. What she says is that as long as these two claims are brought against the same employer and they happen while I work there, that satisfies the relatedness inquiry. But that can't be. Relatedness out of the section. OK. But what about a scenario in which someone said, because I didn't respond well to the sexual harassment, my stock conversion didn't proceed the way it was supposed to? Would you concede that that is related to? Yes. That would potentially be related. That would be more similar to the O'Leary case, where the plaintiff experienced retaliation because they had reported sexual harassment. So there, the adverse employment action would have come out of the sexual harassment. But there are no allegations like that here in the complaint. I'm having a hard time understanding how their interpretation reads out the word related. You could have some random allegation of sexual harassment that pertains to none of the claims in the case at all. So why isn't the word related? Making sure that whatever the allegations are with respect to sexual harassment, that relates to some portion of the case. Right. And so that would be adding something additional, right, to the word case. That the dispute regarding sexual harassment is related in some way to the case to at least, you know, part of it. And so to have the whole case be able to remain in federal court. It would be up to the plaintiff to allege facts connecting other claims in the case. No, not each claim. I'm saying it still requires that they're related in some way to the case as a whole. That it can't be some random allegation that's put in there for salacious reasons or frivolous reasons, whatever it might be. Right. Why would that be reading relatedness in the way that makes it meaningful in some way? So in this case, the only relation that the plaintiff has argued is that these two claims arise out of the same employment relationship. She has not argued that there is any other connection between these two claims. And that would read relates to out of the statute. Because if that is what satisfies relatedness, all a court would have to do is look to confirm that the person is alleging conduct constituting a sexual harassment dispute. And then you would be done. You'd have to make sure that the allegation regarding sexual harassment relates in some way to the case as a whole, in some way. That would be some part of the case. But here, a plaintiff's argument is that as long as there are allegations in the complaint of a sexual harassment dispute, you're done. And then the second inquiry under section A does not work. All right. And that. Can I ask you about, you want to look at other uses of the term case or claims. In section 205, the title of the section is called removal of cases from state court. So how is Congress using the term cases there? Is that referring to individual claims from state court? Or is that referring to the whole case from state court? Well, so cases in section 205 appears in the heading, not in the text of the section. I'm just asking you, what does it mean? Does it mean that, is it talking about removal of a particular claim? Or is it talking about a case as a whole? It's still potentially talking about controversies that are being removed from state court. But section 205 has not been. In the actual text of the provision, it says authorized removal and action or proceeding. So it's clear by the use of the word action or proceeding in the text of the provision that when they use cases in the title, they're referring to a case as a whole, right? And action or proceeding is a case as a whole, right? And if the use of the synonym there means that you think that our reading is unclear, you would still have to get to our narrower construction because of the interpretive principles that apply to the FAA. And the better analog here are the provisions that the EFAA expressly amended. And those provisions are section 208, where the word action was used, section 307 in the FAA, where the word action was used. So the Congress that passed the EFAA looked at those provisions and knew how to use the word action, if that's what it meant. It didn't use that word here. And so at a minimum, the use of the word case creates an ambiguity. So can I ask, would you at a, would you concede at a minimum that the legislative history suggests that maybe not everybody was on the same page? I mean, would you agree that there's some legislative history and some statements that suggest that your client would prevail and there's some legislative history that was also on the other side? No, I don't concede that because the bill sponsors, which is a very important part of the legislative history, they addressed this exact question. So Senator Joni Ernst reported that she, the, and the leader... It requires more than one person to sign on in order to have enough votes to get it passed, right? So, I mean, what I, what I was hoping you would say, or was hoping you'd help me with is what are we supposed to do in terms of using legislative history to just, to fill in some gaps when it's not all in the same direction? So why don't you not litigate that particular point and tell me, presume that I'm right, that there's some legislative history that points in your direction and some legislative history that points in your colleague's direction. How probative should intent be in the face of legislative history like that? Well, assuming that the legislative history is ambiguous, and we disagree with that, it still, our reading still follows from the text of the statute. And even if the text were unclear, then you would just go to the interpretive principles we were discussing earlier. And I talked about two of them, but we didn't talk about the fact that it is the party opposing arbitration. It's their burden to show that Congress intended a preclusion of a waiver of judicial remedies. And so if you thought that the legislative history was ambiguous, then that would counsel in our favor because it's her burden to show that Congress intended to preclude that waiver. But again, that goes back to the original question of how much did Congress intend to disrupt that verdict by passing the legislation? Like, if it didn't, what was the point if they didn't, if that was always going to be the presumption? The point of the legislation was to make sure that plaintiffs can litigate their sexual harassment disputes and related claims in court while also preserving the Federal Arbitration Act's regime with respect to all other unrelated claims. And I was going to discuss the statements from the sponsors. All of them were on the same page. Okay. Can you talk a bit about how you understand us to understand waiver? Like, I mean, I'm presuming that you are going to say that even in the face of Morgan that you're the party, well, maybe, why don't you tell me? What do you think the waiver rules are now? How should we understand waiver in the face of Morgan? This Court has said that waiver is the intentional relinquishment of a known right. And it has said, even after Morgan in Doyle, that that is a fact-specific inquiry with no bright-line rules. And what plaintiff is asking for here is a pro se bright-line rule that anyone who has filed a lawsuit has conclusively waived their right to arbitration.  So let's say that that is bridged too far. Let's just say that that is too much and we want to find something a little more nuanced. Would you concede that someone, which I know is not what you guys did, that someone had filed in court, waited until they lost, and then tried to move for arbitration was being gamesmanship or being overly strategic? That would make this case look a lot more like Doyle because they're the party. I'm asking, we're trying to create a rule, right? Like, we're not just trying to figure this out for your clients. We're trying to imagine the next one. So I'm asking if you think a good part of a rule would be one that precludes people from waiting until they had lost to then move for arbitration. So Doyle reaffirmed that waiver is a fact-specific analysis, and so you would have to look at multiple factors. It would be very significant if a party waited for a court to rule on something like a motion. So how significant is the fact that the party who wants arbitration moved first in court? So you're going to say it's a fact-specific inquiry. It's not all of it. I understand that you're going to say that. But how significant in this fact-based inquiry is the fact that y'all were the first mover and y'all moved in federal court? The district court acknowledged that the filing of the complaint is significant, but it looked at all the facts and concluded that plaintiff hadn't met her burden to show this was an intentional relinquishment. I'm asking for the rule. Like, what is the rule that we create that locks the policies that allow our waiver rules to allow for gamesmanship but would let your clients not have to wait for this case? How would you articulate? If you were us, how would you articulate that rule? Well, you would say that the filing of a complaint could be significant, but that you still have to look to other factors like the time that has passed since the filing of the complaint. And the reason why the filing of the complaint — Why wouldn't — assuming your client knew of the arbitration provision, there's no reason to believe your client didn't know that it existed at the time of the lawsuit, right? That's not in the record, and there could be lots of reasons why someone — But that could be the — if someone just — going back to the question of my colleague here, if you affirmatively file a lawsuit, unless you aren't aware of the arbitration provision, why wouldn't that be an intentional relinquishment of your right to arbitration, just filing the lawsuit, knowing you could have invoked arbitration? Plaintiff herself has suggested a reason. Maybe you don't have the particular arbitration agreement in your files ready to have. So that would be an exception where there's not an awareness of the arbitration agreement, right? That would be an exception where it wasn't intentional. There was a mistake. We didn't know it existed. But assuming it did exist, why wouldn't that be an intentional relinquishment of a right? You can have a lot of games and shit then, because if you sue and you don't like the judge that you get, right, just from the very start of the case, you could say, OK, we don't think that judge is going to be favorable to me. We're going to now go for the arbitration. Plaintiff herself has suggested a reason why someone who wants to arbitrate might still file a placeholder lawsuit. If you know that the other party is about to file its claims in court in a venue far, far away from you that's inconvenient, then you might want to file to make sure that if the court disagrees that these claims are arbitrable, that at least you're in the venue that you want to be in. And because that's a possibility. And maybe you do that well. But that's also a strategic gamble. I mean, I was hoping that you could come up with a more, you know, more harmonizable theory that doesn't have to do with someone trying to rig the system in a way that suits them. And it seems like you could lose. Well, the core inquiry is about strategic advantage with respect to arbitration, meaning you intentionally relinquish your right to arbitrate. You give it a go in court. And then if it doesn't work out the way you want, then you go to arbitration. But the facts here are nothing like that. There was a declaratory judgment action filed in March of last year. Less than two months later, the motion to compel arbitration was filed with zero litigation of substantive issues in the case. And the court acknowledged below that the filing of the complaint was significant. But because this is about intent and it was plaintiff's burden, it also considered all the other facts. And it concluded that there was not an intentional relinquishment of non-right. What does the, we wanted to make it easier for us to litigate if we lost, when we know that the, you know, the person bringing the plaintiff lives in New York? Well, the, the, the. I mean, is that a consideration? So the court. Is that a meritorious consideration? Is that a not meritorious consideration for waiver? The core inquiry is what is the party's intent with respect to arbitration. And because that theory of what the party was trying to do is perfectly consistent with them also wanting to arbitrate and just having this placeholder lawsuit in case that they're not able to do that. The filing of a complaint is at best equivocal. And that's why. This case does differ from Doyle in that respect, right? Because in Doyle, there was a motion made by the party leader seeking arbitration that was, would have been, well, a motion was made by another party and the party in question in the case joined it in order to get a final determination. And then they, that, that, and that, that was not successful. And then they tried arbitration. So they made a motion on, in order to, in order to get a disposition for the case, which is different from just filing a placeholder complaint, right? Yes, that's different. And the court in Doyle emphasized the fact that the type of motion that was filed would have precluded a subsequent motion to compel arbitration. It would have disposed of the case. It would have disposed of the case and it couldn't have gone to arbitration. And then when the court talks about what it means for a party to intentionally avail itself of the court's authority, it explained what that meant. It said that the defendants sought arbitration only after their motion to dismiss was denied. So that shows that the core concern of the waiver doctrine is this gamesmanship with respect to whether you litigate in court or whether you litigate in arbitration. The timing of the original action does have some sort of touches upon prejudice, but it also is a separate consideration that, without regard to prejudice, that prior cases have entertained, correct? Right. And Doyle says that the amount of litigation, the time that has passed in the litigation is still relevant after Morgan as long as it's not through the lens of prejudice. So your argument on the placeholder decision would be that if you file the lawsuit as a placeholder in case you lose and you immediately file to compel arbitration, that that shouldn't be viewed as an intentional inquisition, right? You're just trying to preserve the goal. The best way to lose or the best way after you've lost, he said. Is that the argument? Yes, because that's consistent with a party who wants to arbitrate. And the district court here did apply the correct standard from Morgan. It acknowledged that prejudice was completely out of the picture, and it also applied these factors that Doyle says are still relevant. It carefully considered all the facts about Kerma's law's conduct in the litigation, and it concluded under the facts of this case, just two months, less than two months until the motion to compel arbitration, zero litigation of substantive issues, that plaintiff hadn't met her burden to show an intentional relinquishment of the known right to arbitrate. All right. Thank you. Thank you. You reserve two minutes for rebuttal. Mr. Lacool. Good morning, Your Honor. It's Valdy Lacool for the Plaintiff Appellee, Sylvia D'Azeroa. I would like to just jump in to address the overarching standard, which seems this Court is interested in, which is what does Morgan do to the standard here? How do we interpret Morgan in relation to the EFAA? And I think Morgan is pretty clear. What Morgan says is you do not create bespoke rules for arbitration. You do not favor arbitration. You do not rule against arbitration. It's a sort of analysis where the FAA is created because courts are hostile to arbitration, and I think the pendulum swings the other way significantly, and Morgan resets that. But what the defendant's argument here is, is that the statutory language of the EFAA is ambiguous. We don't agree, and the courts below also don't agree. And that if it is ambiguous, then you apply this interpretive rule that we favor arbitration. And that's not what Morgan says. Morgan says the exact opposite, which is you just look at what the agreement is. You look at what the statute is in order to determine how to come out. You don't put a thumb on the scale. And so in looking at Morgan and this language of the EFAA, the language is clear and unambiguous. It talks about case that this Court has acknowledged. I do want to address the issue of what does that last clause in Section 402 do? In other words, is it sort of written out of the statute because of the word case? And it's not. What that last clause does is it makes clear that a plaintiff who is a victim of sexual harassment, who is alleging sexual harassment conduct, that there is still some nexus between the case and the sexual harassment dispute. In other words, a plaintiff could not come into court and say, I'm the victim of sexual harassment, and I'm suing for trip and fall for, you know, in a tort case. Because that would break that nexus. There still has to be some relationship between the case. That language also does... So don't you have to argue in this case that the stock claims are related to the sexual harassment? No, because the two things, because what that last clause also makes clear is that the two things that have to be related are not the sexual harassment dispute and each individual claim, but the sexual harassment dispute and the case. And relatedness language... ...wasn't seeking any of that, could not bring a trip and fall claim, and just say, hey, I was sexually harassed. Correct. That's right. That's the limiting principle. That is the limiting principle. And the relatedness language, which is specific language, has a long pedigree. This Court, the Supreme Court, has said it is very, very broad. It means in some way connected to. And a case... I think the district judge said, well, it's connected because it's in the same lawsuit, and that can't be right. That's the slip and fall case that isn't related. Well, respectfully, Your Honor, I think what I would say is it is related because the sexual harassment claim is part of the lawsuit, along with several other claims. It therefore is related in the way that this Court and the Supreme Court have used that word. It's connected. Pled together in the same complaint. Correct, but... That can't be right. Well, Your Honor, but that's when we look at... But it says it's related to the sexual assault dispute or the sexual harassment dispute. And so it has to be that. It has to be related. And, you know, the argument of the other side here is that her claims about the stock options are not related. Well... And why does that differ from your slip and fall case? It differs from my slip and fall case. In my slip and fall case, what I'm saying is that there is nothing else other than the trip and fall case. In other words, the plaintiff says... The sexual harassment claim combined in the complaint with it. No, no. What I was using as an example, Your Honor, is if the plaintiff says, I am the victim of sexual harassment, I have an arbitration agreement with my employer, but I'm suing my employer for a trip and fall. That's it. In that case, the EFAA would not invalidate the arbitration agreement. Because in that case, there is no connection between the case and the sexual harassment dispute. But also, we were told... What is the... I'm having trouble getting... Putting my head around... Arms around... Why the claims here regarding the stock options are related to the sexual harassment dispute? Because there are two things that have to be related. On the one hand is the sexual harassment dispute. On the other hand is the case. Not the claim. And so that use of the word case is intentional. If they don't use the word claim, they don't use the word dispute. Claims accrue. Disputes arise. They use the word case. And so if a case has a sexual harassment dispute in it, then the arbitration agreement is invalidated because the case still relates to a sexual harassment dispute, even if it has other claims in it that don't relate to each specific claim of sexual harassment. There are limiting principles. For example, I mean, nothing about this I believe is earth shattering. If a case could be brought in this courthouse against a single plaintiff, against a single defendant, saying I've been sexually harassed, they denied me compensation, I had a workplace injury, that is all properly part of the same case. If there was some reason that that case cannot be brought together with the sexual harassment dispute, then the EFAA would not apply. But suppose you have someone, this may not be a common hypothetical, but I just want to test the theory, is if they were employed by a company, brought a series of claims, sexual harassment claims, and wage claims, but then threw in I was a victim of consumer as a consumer, not as an employee, what do you do with that claim? It was an arbitration, it was one of those quick wrap, you know, arbitration. That no one reads? Right, well, that's another case. I think if it's properly part of that case under the federal rules, then the entire case is exempt from arbitration. That is what Morgan says. We're not going to issue a collective action, the court in Merrim, where they could just find some plaintiff who has some sexual harassment claim and put them into a collective action about wages, and then everybody would avoid arbitration. I mean, that raises a more complicated question, which is whether the sexual harassment claim of Plaintiff A can void the arbitration agreement of Plaintiff B. And that kind of cross-invalidation, and I think... Well, that doesn't relate to the work case, because if plaintiffs are in the same case... Yes, it does. But that is one case. It doesn't matter if it's multiple plaintiffs in it, or does the case relate to only that plaintiff? Well, Section 402 has specific language that deals with that. And the middle clause of Section 402 actually addresses a situation in which those clauses are invalidated, the arbitration clauses are invalidated, where the plaintiff is acting as a class or collective representative of the class that is alleging the sexual harassment dispute. In other words, it seems to me, I don't mean to get too far afield from this case. I want to go back to a couple of things Ms. Hammond said.  She said that you would agree that case can't be, at least ambiguous, that case can mean claim. Do you agree with that? I don't agree with that. I think claim means claim. And as in Olivieri, we are deciding when did the claim accrue or the dispute arise. That's very different from case. As Your Honor pointed out, we're talking about removal of cases, which is an action or proceeding. It's very specific. Section 7 permits the arbitrator to issue a subpoena in a case. We don't normally think of issuing subpoena in a claim. What about the Section 2 provision that she cited? What's your response to that? Well, it talks about controversy, which is more akin to a claim or a dispute than it is to a case. I mean, the normal understanding of a case is I brought a case. So you would concede controversy can include a claim? Is that what you're saying? Yes. I mean, controversy is a claim. Controversy is more ambiguous than a claim. It's more ambiguous, but it's more like a – I can have a controversy in six different points of disagreement with my employer, right? It's much broader. But a case has a specific meaning. It's something we file in court. You know, we file it in court. There are other provisions, too, that I think, to the extent we have to go outside the statutory language, that help the interpretation, although I don't believe we do. And that is Sarbanes-Oxley has an interpretive – has an invalidation provision for arbitration. This Court in Daly v. Citigroup found that that was limited to the particular SOX dispute. And the reason is because that's what the language is in SOX. It invalidates an arbitration agreement with respect to a dispute under SOX provisions. There is also, as amicus point out, there was a prior version of the EFAA, which had very different language. It stated that the arbitration agreement shall have no force or effect with respect to a sexual assault claim. That's very particular language. And again, I think when we're speaking about rules, the rule is a fairly simple one. Is this the kind of case that could be brought together? There may be complications with multiple plaintiffs, multiple defendants, joinder issues. But if the case can be brought together, then the entire case is exempt from arbitration. Can I ask what, if any, role in the doctrinal analysis judicial economy plays? I think it… What permits us to consider that without being policy makers? I think the policy supports why Congress chose the word case. And the reason, the efficiency argument… We wouldn't be making the argument of the economy. It would be that would be something that Congress had in the back of their head in rejecting the word claim and using the word case. And let me give an example. So, for example, the purpose of the EFAA is to remove the barriers to court for plaintiffs who have sexual harassment-related disputes. It found clearly that arbitration, forced arbitration at least, was inadequate. It was not transparent. It was unfair. And the court wanted to, not the court, excuse me, Congress wanted to remove those barriers. Forcing a plaintiff who has a common claim of sexual harassment, when I say common, a typical kind of case where they're saying sexual harassment, retaliation, and wage and hour. Cases that are brought in this court, in the district court, all the time. Forcing them to have to undergo two procedures, two sets of depositions, two hearings or trials is a barrier. People may forego that. Yeah, I think that's a kind of dangerous road to go down. Because they have at least some evidence, including the sponsor of the bill, who believed that there wasn't a sufficient barrier that they should be able to bring all the claims together, right? Well, I think, Your Honor, I understand that. But when we're talking about all the senators and all the representatives, you know, congressional I don't think it really should. It should be based upon the words that were used. I think if you go down that road, you're in some dangerous waters. Because some people who voted for it may want to remove every barrier. And some may just want to remove the barrier with respect to that claim. Which is why digging into the legislative intent is messy and often points to different decisions. That's why we have to look at what Congress wrote. Yes. I just want to, I know they're not binding on us, but I was doing a survey of the district court cases. And I think other than Mara, and I guess Lambert followed Mara, it seems like every other case by every district judge around the country has held consistent with your interpretation, right? Yes. My math. At least how many? Over 15? So I'm not a math whiz, but I've counted over 30 cases across the country that have agreed with Johnson, which was the original case. So we have over 30 that agreed with Johnson. Yes. And we have Mara and Lambert on the other side. We have Mara and Lambert. We have some cases that are unclear, perhaps a handful of those. But the cases that agree with Johnson are overwhelming. And they're across the country. I mean, there are many of them. There are about a dozen in this Court, meeting in the Southern District. There are probably about nine or ten in California. But they are in Ohio, in Tennessee, in Texas. Are you aware of any other circuit that has this pending before it? No. I'm aware that there's one case out of the Sixth Circuit called Members, I believe. Where there was a different EFAA issue, but the court in the Sixth Circuit pointed out that the district court should determine this issue, may want to determine this issue, and also the other issue of what the plausibility versus frivolousness standard is. I do want to just make a brief point about legislative history. There is plenty of legislative history that supports what is this plain interpretation, what I believe is the plain interpretation. Senator Gillibrand spoke about Congress intending to keep cases whole, that multiple claims will move together, that they should proceed together. Senator Durbin talked about the full case proceeding in court. I won't go through all of it. But it's in the amicus brief by public justice from pages 8 to 12. I do want to raise a question about common nucleus of operative facts. And I think that's an important issue. Common nucleus of operative facts comes from 1367A. I'm sorry. I apologize. I mean, the common nucleus of operative facts, I believe, Your Honor raised before, and that deals with supplemental jurisdiction. But the language in 1367A is very different from the language in the EFAA. It allows courts to exercise supplemental jurisdiction over non-Federal claims. That are, quote, so related in the action within such original jurisdiction, that they form part of the same case or controversy under Article III. It's a limiting principle. In other words, they must be so related that they arise out of the same nucleus of operative facts. That's not language here. And it's interesting that you use the term case in that context. Because that's the relationship that exists. And it's consistent with it being a case in itself. But there's no common nucleus of operative facts language in the EFAA. And so if Congress wanted to create that kind of limiting principle, that narrow limiting principle, it knew how to do that. Well, yes, but that's also done in judicial interpretations as well, common nucleus of operative facts. Well, that has to be balanced against what the term relates means in other contexts that the Supreme Court and this Court have found. Which is that there just has to be some relationship with, some connection to, without it being complete and total. And I'm referring here to the Morales case from the U.S. Supreme Court, that relates to means something that's connected to something. It doesn't have to have a specific level of connection. So what you're saying is they didn't use the word so related, it means something less than it has to be the common nucleus of fact. Is that basically the five-minute or the five-minute version of the case? It is. And then we revert back to what relates means in general context. Okay. I don't want to cut off this part of the conversation. I am interested in your proposed rule for waiver. Yeah. My rule would be simple. Did the party seeking arbitration ask the Court to decide the merits of the case? I believe that's the Morgan rule. I'm confident that that's the rule in Doyle. I hope the Court will agree. And I'm, I'm, I'm. Well, I went further than, in Doyle, the facts were different, that's all. The plaintiff joined the motion to have the, have the case disposed of. Yes. And, and lost. But I don't think the and lost part is dispositive. And I will read the Court the holding of Doyle, which is, we hold that following Morgan, a party knowingly relinquishes the right to arbitrate by acting inconsistently with that right, including by first affirmatively seeking a resolution of its dispute in the district court. So, I mean, I think, I'm sorry, I didn't mean to interrupt you. That was me. Well, what I was going to ask then, so I think at a minimum, it means that the first mover is highly probative. And whether or not there's more factors to be considered or less factors, and how much to weigh first mover versus timing might be up in the air, but at the, at a Well, I think it's more than highly probative. I think it's dispositive. Because we're, you know, we could have, they weren't aware of the arbitration provision. So that's one. And their placeholder argument is not necessarily inconsistent with a desire, you know, to arbitrate. It could be a placeholder that you're just having to sit there just in case you lose on the, on the, on the. Well, but see. Why is that inconsistent with the desire to arbitrate if you're using it as a placeholder? Because it's still an intentional act. You can't, they're mutually inconsistent. You can't ask a court, like in this case, to say, hey, declare that I properly filed Ms. Diaz-Roa for cause, and I don't owe her any equity. Your rule is that if you want arbitration, that's got to be your first move. Or at the very least, you say that when you file your motion, which is what did, which is what did not happen in Doyle. In Doyle, the court emphasized the fact that they made the dispositive motion, but didn't say anything about arbitration. Right? And that's exactly what happened here. When, when the defendants here went to court in Texas, and it was a race to the courthouse, they understood that Ms. Diaz-Roa would probably file in the Southern District. They wanted to get the best for them for their dispute, and filed a declaratory judgment action, which we believe was improper. That's why we moved to dismiss it. No, but they didn't do a summary judgment or anything like that. They took no action in the case. They did file, but they, they didn't do anything that would be necessary to affirmably ask that court to make a decision. Right? But it's the same thing as making a motion to dismiss, as in Doyle. It's saying, court, I'm asking you to decide that we did nothing wrong here. Well, it can't happen until they file a motion. If you file a declaratory judgment action, the court's not going to decide it unless they then make a motion of some sort.  But it reveals his intent. I mean, I, I don't understand how you can go into court, and let, let me just explain. The intent, if the intent is not to really have the court decided over arbitration, but to use it as a placeholder, you could say they didn't, until they make a motion for summary judgment, it's not inconsistent with their desire to arbitrate, if possible, and to have this be a backup. What I think you're saying is that you think that it is improper to have a best version of their losing strategy, right? Like, that we should, we should interpret their action, even if it was just to minimize downside risk, as an improper consideration because they are invoking the court. I actually believe at one point in Doyle, the court says you can't have it both ways. And, and if you look at what they did in Texas, it was, the court has jurisdiction, meaning the Texas court. This is the proper venue. We want you, the court, to declare that we did nothing wrong. I'm obviously summarizing, but, but, but I don't see, once you do that. The court, on the basis of the complaint being filed, the court could not rule, the court could not rule in their favor. Something had to be done after that. There had to be a trial. There had to be, something had to happen before they could get their ruling. The fact of the, the fact of the request coming into a courthouse. This has never been, until now, has never been a problem. Well, because it goes to prejudice. And the Supreme Court of Oregon said everything is on the table, that was on the Correct. Suppose they walked into the court in Texas the day after they filed the action, told the judge exactly why they did it. Judge, we were going to make a motion to arbitrate, but we're doing this just in case you don't agree. That, that would be, well, I mean, I think they would have to do that in the first instance. A little too late, you mean a day later? I think a day later, yeah. I mean, what are we going to have? Are we going to have a trial? So you're basically saying because they represented that the court had jurisdiction, they can't. And they asked. And, and, and the other, the other factors that, that are still in play come into play when there's inaction. In other words, the, the defendant in the case, which is usually the case, right, defends a case and then doesn't really ask the court to decide anything. Okay, so maybe that's where we should start. Let's say we disagree with you that merely filing somewhere else means you have intentionally relinquished your right and we need to look at the other factors. What are the other factors and how, how do you think that they, what are the other relative factors after Morgan, or relevant factors, and how do they, how do they work for you? At the risk of not answering, I think all of the factors are relevant so long as they, um, for, so long as you can draw an inference of intent, right? So in a case where somebody sits around for a long time and doesn't do anything until they lose, for example, right? You can infer intent from inaction. Like, how long did you wait? You sat around for eight months, you did nothing, you, you never raised the arbitration issue, you kind of sat around and one day decided, yeah, yeah. Does the, the timing help? I think the timing is difficult for us. It never, but I don't want to concede that too much because. I'm not hearing you're conceding anything. Yeah. That you're, it's difficult. Because it's. It's not a factor in your favor. It's not, and it's also, I'm saying it's not a factor at all here, but also the fact is that they only moved to compel arbitration here after Ms. Diaz-Roa filed her lawsuit. In other words, it seemed to have been a, a reactive act. It was only a week, it was a week. It was, it was. I mean, but, but that's because they knew she was going to sue them and ran into the courthouse first. I mean, I, I think. And so we've got timing and we've got who, who moves first. Who moves first and who asks. Who asks. And then there's, there's another complicating factor here too as well, which is we believe, the Texas Act can stay right now, but it's an improper declaratory judgment act. It doesn't actually ask for any relief. What it's asking for is a declaration that Ms. Diaz-Roa doesn't have any compensation claims. That's an abusive declaratory judgment act here in the Second Circuit and also in the Fifth Circuit. So we, we believe that there can be no case in the, in the Fifth Circuit simply, I mean, they don't sue her for anything. They just simply say, declare us, you know, innocent. I'm, I'm using a pejorative, but, but, but I mean, if, if we want to avoid gamesmanship, then a person who goes into the courthouse and says, judge, decide this, has weight. They may later on say it's a bad idea. We found the arbitration agreement under the, under the bed. By the way, having the arbitration agreement, they have knowledge. There's a, there's a case in this court which we cite. The Sixth Circuit has also said you can't have the agreement and then later on say, oops, I lost it. They don't use that language, but that, that's my, but, but the point is, it is exceedingly difficult to create a rule where you allow a party to back off from their actions. And the intent is the, is the act itself. You don't just file a lawsuit. You have to prepare it. You have to go to your client. You have to, there's lots involved. Didn't prepare, it's an intentional act. Anyway.  All right. Thank you. Thank you. Ms. Hammonds, you have two minutes in the hall. If you don't mind starting where he ended, and I'm not saying you have to agree that this is what's going on in this story, but how would an abusive or improper action factor into how we infer intent? It would be irrelevant because waiver, as the Court just said, is about intent. No, but I'm saying we can't infer intent. Like, you're saying that an abusive or improper action does not infer, we can't infer anything from it? So here, all we did was file a declaratory judgment action, and the Court, the question before the Court is what that conduct shows about intent, not whether that conduct was permissible in the first place. I want to make sure that we talk about the EFAA. Counsel's view is that under the EFAA, a consumer claim that's completely unrelated to sexual harassment is kicked out of arbitration. That has to be wrong. The only limiting principle that my friend on the other side offered. They have the prior version of claim, and they didn't use it. What do we do with that? There, Congress wanted to make sure that, for example, a retaliation claim that is still related to a sexual harassment dispute. So you think claim is hyper-narrow to retaliation? Like, now the interpretation of claim is that it's only a retaliation claim? No, it's any claim that was related to a sexual harassment dispute. So retaliation is one version. I'm asking what do we do about the fact that a prior version used the word claim, and it's not here? So the prior version would have meant that only a sexual harassment claim that meets the elements of sexual harassment, those were the only ones that you could litigate in court. What the new version of the law did was say those can be litigated in court, and so can other claims that are related factually to that claim. So retaliation, if there were other adverse employment. You're saying we cannot infer from that a difference between the word claim and case? The difference to infer is that they wanted to include claims that are related but aren't the sexual harassment claim itself. And the reason why counsel's, the plaintiff's view can't be right that that case refers to the entire action is that the only limiting principle that they have given is that the joinder rules are met, the preexisting joinder rules. But the provisions in the EFAA have to do additional work. It can't be that just because you have properly joined two claims against the same employer together that you've automatically satisfied the relation inquiry in section 402. And that's not the only provision that would then become superfluous. Let's look at subsection B. There, the court is supposed to do two things, decide the applicability of the chapter to the agreement and validity and forcibility of an agreement once it knows the chapter applies. But again, there, as long as you know, under their view, as long as you know that there are allegations of a sexual harassment dispute and the chapter applies, then there's no work for the validity and enforceability of an agreement. And Judge Bianco asked my friend on the other side whether or not they agreed that case can mean claim. They did. On page 22, note 14 of their brief, they agreed that controversy is synonymous with claim. And then they point the court to a definition where case means controversy. So that's a concern. I didn't understand that to be. When I said, is there any case where a court has found the word case to mean a claim, an individual claim? And you said, oh, section 2 does that. And I said, well, doesn't that use controversy? He said, no, it uses case. I'm looking at section 2. It does use controversy. It doesn't use the word case. If you're looking for a case that says this, you could look at Gibbs, which the Chamber of Commerce briefs discussed at length. Their case means all the claims that derive from a common nucleus of operative stats. So that's perfectly All claims? That's not a case? I mean, I don't know what else would be a case if not all claims. Well, one action can include more than one case. All the claims that are related What I'm struggling with is I've been an attorney, you know, for 30-something years, a judge for 20 years, and I've never used the term case to refer to an individual claim, ever. I'm not aware of any lawyer or any judge ever doing that. That's what I'm struggling with.  And if there's Why isn't it that the claim meaning of the word case means an entire case, not individual claims? So I think we've all been using the term wrongly. Congress used case consistently with the Court's interpretation with Gibbs to refer to all the claims that are related to the sexual harassment dispute and their position that case means the entire action can't be right because it would require, it would render these other provisions superfluous. So you have to give it the narrower construction. On the issue of just surveying the other cases, I just want to make sure that there's not other cases going your way that I'm aware of. They're saying there's over 30 cases around the country that have interpreted what they're suggesting. Is there any other case other than Mira and Lambert? So there's Mira, there's Lambert, there's the Turner case out of California, and those are the main ones that I think have the most persuasive reasoning on this point. And I believe Turner was cited in the party's briefs. All right. Thank you both. We appreciate your arguments today. It was good you were the only case because we gave you all that extra time. Your clients got their money's worth. We'll reserve decision. Have a good day.